ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| LUCAS CASUL CRUZ | | *REVISIÓN ADMINISTRATIVA* procedente del Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación |
|---|---|---|
| Recurrente | | |
| v. | KLRA202400202 | |
| DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN | | Caso Núm. B705-41252 |
| Recurrido | | Sobre: Clasificación de Custodia |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

El 15 de abril de 2024, el señor Lucas Casul Cruz, (en adelante, Sr. Casul Cruz), presentó el recurso de epígrafe ante este Tribunal. A pesar de que fue intitulado por el confinado como *Certiorari* el mismo es un recurso de revisión administrativa. Por medio de este, nos solicita que revisemos la *Resolución*, emitida y notificada el 13 de febrero de 2024, por el Comité de Clasificación y Tratamiento (en adelante, CCT) del Departamento de Corrección y Rehabilitación. En virtud de la determinación recurrida, el CCT ratificó su clasificación de custodia **mediana.**

A pesar de que el Sr. Casul Cruz no presentó el formulario OAT 1480, en solicitud para comparecer *in forma pauperis*, por excepción, le eximimos de completarlo y declaramos que, por su condición de confinado, se acepta su comparecencia en dicha forma. Se advierte que, en próximas ocasiones, deberá cumplimentar el

formulario correspondiente para poder comparecer sin el pago de derechos y costas.[1]

De conformidad con lo dispuesto en la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7(B)(5), este Tribunal puede prescindir de términos no jurisdiccionales y escritos, con el propósito de lograr su más justo y eficiente despacho. En consideración a lo anterior, procedemos a disponer del presente recurso sin requerir ulterior trámite.

**I**

El señor Casul Cruz fue sentenciado el 24 de febrero de 2012 a cumplir condena de 252 años por delitos de asesinato en primer grado y Ley de Armas, respectivamente. El 27 de febrero de 2012, Casul Cruz fue clasificado inicialmente en custodia máxima debido a la gravedad y severidad de los delitos por los cuales fue convicto. Una evaluación llevada a cabo el 27 de febrero de 2023, le hizo acreedor de una reclasificación a custodia mediana, toda vez que presentó interés por los programas de rehabilitación, cumplir favorablemente con su plan institucional y por haber realizado cambios positivos encaminados a su rehabilitación.

El 13 de febrero de 2024, la señora Carmen Judith Martínez Madera, técnico socio penal de la institución Ponce Principal, confeccionó la "Hoja de Escala de Reclasificación de Custodia" del recurrente. Dicho documento contiene tres Partes, siendo la primera la "Identificación del Confinado", la segunda la "Evaluación de Custodia" y, la tercera y última "Resumen de la Escala y Recomendaciones." Cada una se rige por ocho criterios distribuidos a lo largo del documento que, al aplicarse la correspondiente valoración numérica, culminará en una recomendación al CCT. En la Parte II, surge que el señor Casul Cruz obtuvo en el renglón

---

[1] Véase la Regla 78 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 78.

número uno sobre "Gravedad de los Cargos/Sentencias Actuales" la puntuación máxima de seis. En los demás criterios que transcurren entre los renglones dos al ocho le fue aplicado un número tres o el equivalente a custodia mínima.

Del expediente surge que durante este periodo el señor Casul Cruz completó exitosamente cursos académicos y de modificación de conducta, y no incurrió en faltas disciplinarias. No obstante, luego de aplicado los delitos y severidad de los cargos por las cuales Casul Cruz resultó sentenciado en 2012, al amparo de la Parte III, Sección D denominada "modificaciones discrecionales para un nivel de custodia más alto" por gravedad del delito sumó la puntuación a un total de 6, le mantuvo bajo custodia mediana. La Técnico Sociopenal Martínez Madera concluyó que la razón de serle aplicada al recurrente la "Modificación Discrecional" es porque "El MPC cumple sentencia de 252 años por Asesinato en Primer Grado y Ley de Armas, delitos que envuelven un alto grado de violencia, mostrando menosprecio hacia la vida del prójimo".[2]

El CCT mediante *Resolución* emitida ese mismo día acogió en su totalidad las recomendaciones anteriormente mencionadas. **Determinó que el señor Casul Cruz debe continuar siendo observando ajustes en este nivel de custodia por un período adicional de un año (1) para maximizar garantías de que pueda lidiar en una custodia de menores restricciones**.

Según se desglosa de la *Resolución* el CCT concluyó mantener al Sr. Casul Cruz en Custodia Mediana. De las determinaciones de hecho, se desprende:

1. El 24 de febrero de 2012 miembro de la población correccional fue sentenciado a 252 años por los delitos de Asesinato en Primer Grado (4c) & Art. 5.07 LA. (2c).
2. **El 27 de febrero de 2012 fue clasificado inicialmente en Custodia Máxima por cumplir sentencia larga de 252 años por delitos de severidad extrema. En este nivel de custodia permaneció hasta el 27 de febrero**

---

[2] Véase, Apéndice, pág. 2.

**de 2023 cuando fue reclasificado a Custodia Mediana por presentar interés por los programas, cumplir favorablemente con su plan institucional y por haber logrado hacer cambios positivos en pro de su rehabilitación.**

3. Posee cuarto año de escuela superior.
4. Realiza labores de Mantenimiento de la Cancha Exterior de la Fase 4.
5. Completó las terapias de Control de Conducta Violenta el 30 de julio de 2020, las de Trastornos Adictivos el 15 de noviembre de 2021 y las de Aprendiendo a Vivir sin Violencia el 20 de octubre de 2022.
6. Ha cumplido 13 años, 6 meses & 25 días de una sentencia de 252 años.
7. Cumple el mínimo de su sentencia el 10 de julio de 2035 y el máximo está pautado tentativamente para el 10 de julio de 2262.
8. **Al aplicar la escala de reclasificación de custodia arroja una puntuación de 3, equivalente a Custodia Mínima, por lo que nos acogemos a la Modificación Discrecional de Gravedad del Delito**.

(Véase Ap., págs. 1-3).

El Sr. Casul Cruz solicitó una *Reconsideración Sobre la Clasificación de Custodia* el 20 de febrero de 2024. No obstante, la *Reconsideración* no fue acogida por la Supervisora de Clasificación, según obra en el expediente de autos dicha denegatoria fechada al 6 de marzo de 2024 y según consta del Trámite de Recibo de Petición de Reconsideración Superior Unidad Socio Penal con fecha del 21 de marzo de 2024. En la denegatoria de la *Moción de Reconsideración*, la Supervisora de Clasificación expuso:

Cumple 252 años de prisión por los delitos de Asesinato en Primer Grado (4 casos) e infracción al Artículo 5.07 de la Ley de Armas. El mínimo de sentencia está para el 10 de julio de 2035 y la fecha prevista de excarcelación está para el 10 de julio de 2262. Al momento de la evaluación había cumplido 13 años, 6 meses y 25 días en confinamiento.

Al aplicar la escala de reclasificación de custodia esta arrojó una puntuación de 3, ubicándolo en custodia mínima. **Sin embargo, el Comité de Clasificación acogió la Modificación Discrecional "Gravedad del Delito" para mantenerlo en un nivel de custodia intermedio, explicando que cumple una sentencia de 252 años por Asesinato en Primer Grado y Ley de Armas, delitos que envuelven un alto grado de violencia, mostrando menosprecio hacia la vida del prójimo.**

De la evaluación del expediente tenemos que el Comité de Clasificación y Tratamiento, consider[ó] que completó los siguientes Programas de Tratamiento:

- Control de Conducta Violenta el 30 de julio de 2020
- Trastornos Adictivos el 15 de noviembre de 2021
- Aprendiendo a Vivir Sin Violencia el 20 de octubre de 2022

Cuenta con Cuarto Año de Escuela Superior y se encuentra realizando labores en el área de Mantenimiento de la Cancha Exterior. No se desprende que haya resultado incurso en querellas disciplinarias durante su proceso de confinamiento.

El Manual Para la Clasificación de Confinados # 9151 en la Sección 7 Reclasificación establece que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia o la vivienda asignada verificar la adaptación del confinado y prestarle atención a cualquier cosa que pueda surgir.

La revaluación de custodia se parece a la evaluación inicial de custodia, pero recalca aún más en la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión. En adición también señala que los confinados que cumplen sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución.

Ahora bien, el Manual Para la Clasificación de Confinados Establece los datos básicos a considerarse al momento de realizar una evaluación para clasificar a un confinado sentenciado:

- Delito(s) Actual(es)
- Sentencia(s) Actual(es)
- Historial delictivo anterior
- Orden(es) de detención y arresto
- Encarcelamientos previos bajo DCR
- Fecha de excarcelación prevista

El Comité de Clasificación y Tratamiento considera además otros factores discrecionales contemplados en el Manual. Para la Clasificación de Confinados, como lo es la gravedad del delito cometido, las circunstancias que lo rodearon y como se afectó la comunidad.

En el caso que nos ocupa, podemos observar que fue reclasificado de custodia máxima a custodia mediana el pasado 27 de febrero de 2023, por lo que cuenta con un nivel intermedio de supervisión, oportunidad brindada por el Comité de Clasificación y Tratamiento conforme a lo establecido en el Reglamento Para la Clasificación de Confinados, ya que ostenta una sentencia de 252 años por la muerte de cuatro seres humanos y lleva en confinamiento 13 años, 6 meses y 25 días.

Por todo lo antes señalado, se concurre con la determinación del Comité de Clasificación y tratamiento. Deberá permanecer en custodia mediana en este nivel intermedio de supervisión demostrando buen comportamiento además continuar cumpliendo con su de Plan Institucional.

(Véase, Ap., págs. 1-3).

Aún inconforme, el 2 de abril de 2024, el Sr. Casul Cruz suscribió el presente recurso de revisión judicial, el cual fue sometido el 15 de igual mes y año, ante este Tribunal. El recurrente le imputa al Departamento de Corrección y Rehabilitación la comisión de los siguientes errores:

> ERRÓ EL COMITÉ Y LA SUPERVISORA DE CLASIFICACIÓN AL RATIFICAR LA CUSTODIA MEDIANA DEL SR. CAS[Ú]L CRUZ AL UTILIZAR COMO ÚNICO FUNDAMENTO LA MODIFICACIÓN DISCRECIONAL "GRAVEDAD DEL DELITO" PARA RATIFICARLO.

> ERRÓ EL COMITÉ Y LA SUPERVISORA DE CLASIFICACIÓN AL RATIFICAR LA CUSTODIA MEDIANA DEL SR. CASUL CRUZ SIN REALIZAR UN ANÁLISIS INTEGRAL DEL EXPEDIENTE NI CONSIDERAR TODOS LOS AJUSTES POSITIVOS EN SU TOTALIDAD.

**II**
**-A-**

El Reglamento Núm. 9151 de 22 de enero de 2020, titulado "Manual para la Clasificación de los Confinados" (en adelante, Reglamento 9151), establece un sistema organizado para ingresar, procesar y asignar los confinados a instituciones y programas del Departamento de Corrección. El referido reglamento, dispone que la clasificación de los confinados consiste en la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo, las exigencias y necesidades de la sociedad. El proceso de clasificación coordina la custodia física de los confinados con los programas y recursos disponibles dentro del sistema correccional. Reglamento 9151, Acápite I.

La determinación administrativa respecto al nivel de custodia exige que se realice un adecuado balance de intereses. *Cruz v. Administración,* 164 DPR 341, 352 (2005). Por un lado, se encuentra el interés público de lograr la rehabilitación del confinado y el de mantener la seguridad institucional y general del resto de la población correccional. *Íd.* Por otro lado, está el interés particular del confinado de permanecer en determinado nivel de custodia. *Íd.* En ese proceso, cualquier cambio en el nivel de custodia implica la

consideración de una serie de factores subjetivos y objetivos que requieren de la pericia del Departamento de Corrección y Rehabilitación. *Íd.*

El Comité de Clasificación y Tratamiento es el comité establecido en cada una de las instituciones penales encargado de evaluar las necesidades de seguridad y los programas de los confinados sentenciados. Sección 1 del Reglamento 9151. Este cuerpo posee la facultad de revisar anualmente los niveles de custodia de los confinados clasificados en custodia mínima y mediana. Por su parte, el nivel de custodia de los confinados clasificados en custodia máxima se revisará cada seis meses, después de un año de clasificación como confinado de custodia máxima. Sección 2, Parte V(D) del Reglamento 9151; *Cruz v. Administración, supra*, a la pág. 354.

El mencionado Reglamento establece las definiciones de los niveles de custodia que tendrán las instituciones correccionales, a saber: máxima, mediana, mínima y mínima/comunidad:

> *Custodia Máxima- Confinados de la población general que requieren un grado alto de control y supervisión. A estos individuos se les puede restringir de determinadas asignaciones de trabajo y de celda, así como de determinadas áreas dentro de la institución, según se estime necesario por razones de seguridad. Se requerirán por lo menos dos oficiales correccionales como escolta para realizar viajes de rutina o de emergencia fuera de la Institución. Se utilizarán esposas, cadenas y grilletes en todo momento mientras los confinados de custodia máxima se encuentren fuera el perímetro de seguridad (la verja o el muro). Estos confinados estarán en celdas y no en dormitorios. Esto no limita la participación del confinado en los programas y servicios. Contarán con un período mínimo de dos (2) horas diarias de recreación física al aire libre, según lo permitan las condiciones climáticas.*
>
> ***Custodia Mediana- Confinados de la población general que requieren un grado intermedio de supervisión. Estos confinados son asignados a celdas o dormitorios y son elegibles para ser asignados a cualquier labor o actividad que requiera supervisión de rutina dentro del perímetro de seguridad de la institución. Se requiere de dos oficiales correccionales como escolta para realizar viajes, ya sean de rutina o de emergencia, fuera de la institución, y se utilizarán esposas con cadenas en todo momento. A discreción de los oficiales de escolta, se podrán utilizar otros implementos de restricción.***

*Custodia Mínima- Confinados de la población general que son elegibles para habitar en viviendas de menor seguridad y que pueden trabajar fuera del perímetro con un mínimo de supervisión. Estos confinados son elegibles para los programas de trabajo y actividades en la comunidad compatibles con los requisitos normativos. Estos individuos pueden hacer viajes de rutina o de emergencia fuera de la Institución sin escolta, cuando tengan un pase autorizado, y pueden ser escoltados sin implementos de restricción.*

*Custodia Mínima/Comunidad- Confinados de la población general que están en custodia mínima, pero que han sido catalogados según las políticas del Departamento de Corrección como elegibles para programas comunitarios. Por lo general, estos son programas residenciales sin perímetro de seguridad alguno.*

Sección 1 del Reglamento 9151.

La Sección 7 del Reglamento 9151 alude al procedimiento para la revisión del nivel actual de custodia de cada confinado a los fines de determinar cuán apropiada es dicha clasificación**. De igual forma, la referida sección establece que el proceso de reevaluación se asimila a la evaluación inicial de custodia, pero recalca aún más la conducta institucional como reflejo del comportamiento real del confinado durante su reclusión.** Igualmente resalta que es importante que los confinados que cumplan sentencias prolongadas tengan la oportunidad de obtener una reducción en niveles de custodia mediante el cumplimiento con los requisitos de la institución. No obstante, y como consagra la Sección 7 del Reglamento 9151, **la reevaluación de custodia no necesariamente resulta en un cambio en la clasificación de la custodia asignada al miembro de la población correccional**.

A los fines de realizar las reclasificaciones de custodia se observa el procedimiento establecido en la Sección 7 y en las instrucciones contenidas en el "Formulario de Reclasificación de Custodia/Escala de Reclasificación de Custodia (Casos Sentenciados)" encontrado en el Apéndice K del Reglamento 9151. Por su parte, la escala de evaluación para determinar el nivel de custodia en el que se ubicará al confinado está basada en renglones

objetivos a los que se asignará una ponderación numérica fija. A cada criterio se le asignará una puntuación que se sumará o restará según corresponda al historial del confinado. Los factores para considerarse son los siguientes: **(1) la gravedad de los cargos y las sentencias actuales;** (2) el historial de delitos graves anteriores; (3) el historial de fuga; (4) el número de acciones disciplinarias; (5) la acción disciplinaria más seria; (6) las sentencias anteriores por delitos graves como adulto en los últimos 5 años; (7) la participación en programas institucionales, y (8) la edad al momento de la evaluación.

El nivel de custodia asignado para los casos sentenciados, según la escala, es el siguiente:

| | | |
|---|---|---|
| *Mínima* | = | *5 puntos o menos* |
| *Mediana* | = | *5 puntos o menos si el confinado tiene una orden de detención, de arresto, u orden de detención por violar la libertad bajo palabra o probatoria.* |
| *Mediana* | = | *6-10 puntos en los renglones 1-8* |
| *Máxima* | = | *7 puntos o más en los renglones 1-3* |
| *Máxima* | = | *11 puntos o más en los renglones 1-8.* |

Reglamento 9151, Apéndice K, Sec. III-A.

**Sin embargo, ésta no obliga al Comité a recomendar el nivel de custodia establecido según el total de puntos acumulados. Ello, debido a que se incluyen otros renglones sobre modificaciones discrecionales a base de las cuales se puede aumentar o disminuir el nivel de custodia correspondiente.** Los criterios para las **modificaciones discrecionales adicionales** para cambiar un nivel de custodia son los siguientes: **(1) la gravedad del delito**; (2) el historial de violencia excesiva; (3) la afiliación prominente con gangas; (4) la dificultad en el manejo del confinado; (5) los grados de reincidencia; (6) el riesgo de fuga; (7) el comportamiento sexual agresivo; (8) los trastornos mentales o desajustes emocionales; (9) si representa una amenaza

o peligro; (10) la desobediencia de las normas o rehusarse al plan de tratamiento, y (11) el reingreso por violación de normas. Reglamento 9151, Apéndice K, Sec. III-D.

*-B-*

La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9671, permite que se solicite al Tribunal de Apelaciones la revisión de las decisiones administrativas. A esos efectos, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la experiencia y conocimiento especializado de la agencia. *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012); *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999); *Agosto Serrano v. F.S.E.*, 132 DPR 866, 879 (1993). Por lo tanto, la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

La revisión judicial es limitada, esta solo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o medió abuso de discreción. *Mun. de San Juan v. J.C.A.,* 149 DPR 263, 280 (1999); *T-JAC, Inc. v. Caguas Centrum Limited, supra* a la pág. 84; *Com. Vec. Pro-Mej., Inc. v. J.P.,* 147 DPR 750, 761 (1999). De manera que cuando un tribunal alcance un resultado distinto al obtenido por la agencia, debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política publica o en la apreciación de la prueba. *Otero v. Toyota,* 163 DPR 716, 718 (2005).

**III**

La parte recurrente nos solicita que revisemos una *Resolución* emitida por el CCT el pasado 13 de febrero de 2024, donde se ratificó la custodia del señor Casul Cruz en una custodia mediana. Señala el recurrente que, el CCT y la Supervisora de Clasificación incidieron en ratificar la custodia mediana, al utilizar como único fundamento la modificación discrecional "gravedad del delito" sin tomar en consideración los ajustes positivos obtenidos, como el haber culminado cursos y no haber incurrido en problemas de indisciplina. *No le asiste la razón.*

Según se desprende de la "Hoja Escala de Reclasificación de Custodia", al señor Casul Cruz le correspondía ser asignado a un nivel de custodia mínima. No obstante, como adelantamos, esa escala no obliga al Comité a recomendar el nivel de custodia establecido según el total de puntos acumulados. Ello, debido a que la misma puede ser modificada discrecionalmente en el escenario de que dicho cuerpo colegiado entienda que se configuran algunas de las **modificaciones discrecionales** establecidas en el Reglamento 9151.

En este caso, el Comité fundamentó su determinación en que aplicaban las modificaciones discrecionales para un nivel de custodia más alto por "la gravedad del delito". En esencia dicho inciso dispone que:

> **Gravedad del delito:** la puntuación no refleja la naturaleza del crimen. El personal debe documentar las características del delito que aparecen en la declaración de los hechos que se están utilizando cono fundamento para la decisión de la modificación.
>
> Los confinados cuyas circunstancias del delito y sus consecuencias haya creado una situación de tensión en la comunidad, revistiéndose el caso de notoriedad y la comunidad se sienta amenazada con su presencia.
>
> Reglamento 9151, Apéndice K, Sec. III-D

En este caso, el foro recurrido tomó en consideración que el recurrente fue hallado culpable de cuatro (4) asesinatos y dos (2)

infracciones a la Ley de Armas, *supra.* Ello, por privarle la vida a tres hombres y una mujer mediante el uso de armas de fuego en un lugar público donde se puso en peligro la vida y seguridad de otras personas en la denominada "Masacre de Juncos".

El Comité en su *Resolución* determinó que el señor Casul Cruz había completado las Terapias de Control de Conducta Violenta, Trastornos Adictivos y las terapias de Aprendiendo a Vivir sin Violencia. También resalta que realiza labores de mantenimiento en la Cancha exterior de la fase 4. El CCT puntualiza que al momento el recurrente no cuenta con querellas ni con informes por actos de indisciplina, y que finalmente en la Escala de Reclasificación de Custodia arrojó una puntuación de 3, lo que es equivalente a Custodia Mínima. Sin embargo, el CCT acogió la Modificación Discrecional de Gravedad del Delito, por lo que concluyó que el recurrente debía completar un período adicional en custodia mediana el cual será en aproximadamente dentro de un año.

El Comité no abusó de su discreción cuando luego de evaluado todos los criterios, la Gravedad del Delito, donde el señor Casul Cruz cumple una sentencia de 252 años por cuatro delitos de asesinato en primer grado y Ley de Armas, del cual sólo ha extinguido 13 años y 25 días, en hechos que **envolvieron un alto grado de violencia y menosprecio hacia la vida del prójimo.** El CCT también señaló que basado en un análisis de la totalidad de las circunstancias de la Sección 7 del antedicho Reglamento Núm. 9151 y el poco tiempo que lleva en custodia mediana, el señor Casul Cruz debe permanecer bajo dicha clasificación de modo que pueda ser reevaluado su ajuste en consideración a su plan institucional en un término razonable de un año.

Es preciso resaltar que, las reevaluaciones de custodia no implican necesariamente un cambio en la clasificación de custodia. Toda vez que implica que el Comité tiene discreción al evaluar y

determinar si el miembro de la población corrección ha cumplido con los criterios objetivos y subjetivos para merecer un nivel menor de custodia. Evaluado el expediente ante nuestra consideración, no encontramos que el CCT haya errado al ratificar la clasificación de custodia del señor Casul Cruz. *Por lo que no se cometió el error señalado.*

Por otra parte, señala el recurrente que erró el CCT y la Supervisora de Clasificación al ratificar la custodia mediana sin realizar un análisis integral del expediente ni considerar todos los ajustes positivos en su totalidad. *No le asiste la razón.*

Como fue discutido en el señalamiento de error anterior, el CCT evaluó no solo el comportamiento que el señor Casul Cruz ha venido demostrando, sino también los cursos terapéuticos y conductuales que ha completado, el trabajo que ha realizado, la ausencia de actos de indisciplina y querellas, la totalidad del expediente que obra ante nos acredita tal análisis. Tal como se desprende de la *Resolución* emitida, colegimos que, el Comité pudo evaluar de manera eficiente el nivel de custodia adecuado para el señor Casul Cruz, basándose en su conocimiento especializado y en los factores ya discutidos.

Es forzoso concluir que la decisión emitida por el CCT está basada y fundamentada en la evidencia que obra en el expediente administrativo y en el *expertise* que goza como organismo. El señor Casul Cruz no demostró de manera fehaciente que el Comité actuó de manera irrazonable, caprichosa, ilegal o fuera del marco de los poderes delegados a ésta. De igual forma, el señor Casul Cruz no demostró que no se hubiera realizado un examen integral del expediente, o tomado en cuenta los ajustes positivos en su totalidad. Al contrario, El CCT señaló los ajustes positivos que el recurrente ha implementado, y determinó que ameritaba un tiempo adicional en la custodia mediana para poder efectuar un nivel de

cumplimiento satisfactorio por la gravedad del delito cometido, **toda vez que envolvió un alto grado de violencia y menosprecio hacia la vida del prójimo.**

Como corolario de lo anterior, y de acuerdo con las doctrinas de revisiones administrativas precitadas, dentro de la discreción de la agencia, los tribunales revisores hemos de otorgar deferencia a las decisiones administrativas, pues estos organismos gubernamentales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. La mera insatisfacción por parte de la parte recurrente con el dictamen emitido no es motivo suficiente para que como foro revisor intervengamos y la sustituyamos por la nuestra.

Es por que ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte del CCT, razonamos que resulta innecesario que intervengamos con su determinación. Es por eso que, procede confirmar la determinación recurrida. *No se cometió el error señalado.*

**IV**

Por los fundamentos expuestos, los cuales hacemos formar parte de este dictamen, confirmamos la *Resolución* emitida por el Comité de Clasificación y Tratamiento.

Notifíquese a las partes, al Procurador General y a la Secretaria del Departamento de Corrección y Rehabilitación.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones